STATE OF NORTH CAROLINA v. THOMAS FRANCIS FLANNERY

No. 7615SC433

(Filed 15 December 1976)

1. Automobiles § 117— speeding — sufficiency of evidence

Evidence was sufficient to be submitted to the jury in a prosecution for speeding in excess of 80 mph where such evidence tended to

State v. Flannery

show that a patrolman observed a vehicle on an interstate highway traveling at a high rate of speed; the officer gave chase but lost sight of the vehicle's taillights when it went over a hill or around a curve; the officer did not recall seeing any other vehicles in the area at the time; the officer gave his opinion that the vehicle was traveling at 100 mph and higher; the officer apprehended the driver of the vehicle after its motor stalled and cut off; and the officer stated that the chase, which covered about eight miles, lasted for about 10 minutes.

2. **Automobiles § 126— breathalyzer and blood tests — request from arresting officer proper**

G.S. 20-139.1 is not violated when a request for chemical analyses of breath and blood comes from the arresting officer, and such an officer is competent to testify as to defendant's refusal to submit to such tests.

3. **Criminal Law § 158— conclusiveness of record — matters not in record — argument in brief not considered**

Generally speaking, when properly authenticated or certified, the record filed for the purpose of appeal imports absolute verity, and is the sole, conclusive, and unimpeachable evidence of the proceedings in the lower court; moreover, matters discussed in the brief outside the record will not be considered.

4. **Automobiles § 126; Constitutional Law § 33— driving under the influence — refusal to take breathalyzer, dexterity tests — no Miranda warnings**

In a prosecution for speeding and driving under the influence of intoxicating liquor, admission of evidence of defendant's refusal to submit to breathalyzer and physical dexterity tests did not violate defendant's right against self-incrimination, and admission of such evidence was not dependent upon whether Miranda warnings were given defendant.

5. **Criminal Law § 169— objectionable testimony — similar testimony elicited by defendant**

The admission of testimony over objection is harmless where the defendant elicits similar testimony on cross-examination.

6. **Automobiles § 127— driving under the influence — sufficiency of evidence**

Evidence was sufficient to be submitted to the jury in a prosecution for driving under the influence where it tended to show that an officer observed a vehicle traveling at a high rate of speed for approximately eight miles; after the car stopped, the officer approached it; defendant got out of the car, staggered slightly and had a moderate odor of alcoholic beverage about his person; after defendant was taken to the county jail, he continued to stagger, and the officer noticed that defendant's eyes were red; during this time defendant was unsteady on his feet and swayed; and the officer testified at trial that he was of the opinion that defendant was under the influence of some intoxicating beverage.

**7. Criminal Law § 163— jury instructions — objection for first time on appeal**

 Defendant's assignments of error to the trial court's summarization of the evidence are overruled where defendant made no objection at trial, though he was given an opportunity to do so by the trial court.

APPEAL by defendant from *Smith, Special Judge.* Judgment entered 8 January 1976 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 12 October 1976.

Defendant was charged with speeding in excess of 80 miles per hour and driving under the influence of intoxicating liquor. He entered pleas of not guilty and was convicted by a jury on both counts. Defendant was sentenced to imprisonment for six months, suspended for two years upon the condition that he pay a $300 fine, surrender his license and not violate any North Carolina law.

At trial, State's evidence consisted primarily of the testimony of Ernest W. Clemmons, a North Carolina Highway Patrolman. He stated, *inter alia,* that he had been a patrolman for 8½ years and was on duty on the night of 12 December 1974. At approximately 11:00 p.m., while operating a VASCAR unit near the intersection of Huffman Mill Road and I-85 in Alamance County, Clemmons observed a vehicle traveling southward on I-85 "at a high rate of speed." Clemmons pulled onto I-85 and pursued the vehicle beyond two exits before the car took the Mount Hope Church Road exit in Guilford County, approximately eight miles beyond the point at which he first gave chase. Clemmons identified the car he saw at Huffman Mill Road as a Ford, but at various points during the pursuit, he "would lose sight of the taillights when the vehicle would go over a hill or around a curve." He did not recall observing any other vehicles in the area at the time. Clemmons further testified that "[i]ndependent of any speed detection device, it was my opinion that the speed was a hundred and excess." He was unsure as to how long he chased the vehicle but that a 10 minute pursuit "sounds about right."

After exiting from I-85 at the Mount Hope Church Road, the vehicle attempted to make a sharp right turn off the ramp but the motor stalled and cut off. Trooper Clemmons approached the car and told its lone occupant to get out. He recognized the occupant of the car as defendant Flannery with whom he was

acquainted. As he got out of the car, he staggered slightly and Clemmons "noticed a moderate odor of alcoholic beverage about the person of Mr. Flannery." Gas was leaking through a small hole in the tank.

Clemmons advised defendant of his rights, placed him under arrest and drove him to the Alamance County jail in Graham. As defendant walked from the car to the jail, he staggered. Defendant was taken to the breathalyzer room to see Officer Coleman, a certified breathalyzer operator. When defendant left to go to the bathroom, Clemmons noticed that he continued to stagger and "his eyes were red. He was unsteady on his feet and he was swaying." Clemmons "was of the opinion that Mr. Flannery was under the influence of some intoxicating beverage." Defendant was requested to take a breathalyzer test and a series of physical dexterity tests, but "[h]e refused to do any tests." Officer Coleman testified that he had seen defendant on the night of 12 December 1974 and that "[t]here was a moderate odor of alcoholic beverage about him. In my opinion he was under the influence of intoxicating liquor."

*Attorney General Edmisten, by Associate Attorney Isaac T. Avery III, for the State.*

*Max D. Ballinger for defendant appellant.*

MORRIS, Judge.

[1] In his first, third, fifth and seventh assignments of error, defendant contends that the trial court erred in denying his motions for judgment as of nonsuit and directed verdict as to the speeding charge, on the grounds that there was insufficient evidence for the case to be submitted to the jury. We disagree.

In considering these assignments of error we are guided by the oft-stated principle that in a motion to dismiss as of nonsuit, the evidence must be taken in the light most favorable to the State. The State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. *State v. McKinney,* 288 N.C. 113, 215 S.E. 2d 578 (1975) ; *State v. Marze,* 22 N.C. App. 628, 207 S.E. 2d 359 (1974). The court is not concerned with the weight of the testimony, or with its truth or falsity, but only with questions of whether the offense charged has been committed and that defendant committed it. *State v. Hines,* 286 N.C. 377, 211 S.E. 2d 201 (1975) ; *State v.*

*Ledford,* 23 N.C. App. 314, 208 S.E. 2d 870 (1974). The standard is the same with regard to defendant's motion for a directed verdict. *State v. Holton,* 284 N.C. 391, 200 S.E. 2d 612 (1973).

Defendant specifically objects to the sufficiency of Trooper Clemmons' testimony relating to the speed of defendant's vehicle. Defendant argues that since Clemmons lost sight of the car as it went over hills and around curves and since the length of the chase would indicate speed of less than 100 miles per hour, the patrolman's testimony was insufficient to show the speed of the vehicle. Defendant did not interpose an objection at trial to any of the opinion evidence he now says was insufficient. Viewing the evidence in the light most favorable to the State and giving the State every reasonable inference, *State v. McKinney, supra,* we hold that the evidence was sufficient to withstand defendant's motions for nonsuit and directed verdict. These assignments of error are overruled.

**[2]**   Defendant also assigns as error certain rulings of the trial court regarding the admissibility of portions of Trooper Clemmons' testimony. Clemmons testified, over objection, that he requested defendant to take a breathalyzer test and various physical dexterity tests. These tests were not performed, according to Clemmons, because defendant "refused to do any tests." In his ninth and eighteenth assignments of error, defendant contends that the admission of defendant's refusal to do *any* tests constituted prejudicial error.

G.S. 20-139.1 provides in pertinent part:

"(b) Chemical analyses of the person's breath or blood, to be considered valid under the provisions of this section, shall have been performed according to methods approved by the Commission for Health Services and by an individual possessing a valid permit issued by the Commission for Health Services for this purpose. . . . [I]n no case shall the arresting officer or officers administer said test.

.   .   .

(f) If a person under arrest refuses to submit to a chemical test or tests under the provisions of G.S. 20-16.2, evidence of refusal shall be admissible in any criminal action arising out of acts alleged to have been committed while the person was driving or operating a vehicle while under the influence of intoxicating liquor."

Defendant maintains that since subsection (b) prohibits *administration* of the chemical tests by the arresting officer, any evidence of the *refusal* of such tests must likewise come from a duly licensed breathalyzer operator and may not come, as it did in the present case, from testimony by the arresting officer. We cannot agree with defendant's construction of G.S. 20-139.1. The statutory requirement that chemical analyses of a defendant's breath or blood be conducted according to scien-. tifically approved methods by a person possessing a permit by the Commission for Health Services is clearly to protect an alleged inebriate from the prejudicial effects of inaccurate and unscientific tests. This legislative purpose would not be served in any way by requiring, as defendant urges, that the mere *request* for the tests come from a duly licensed breathalyzer operator other than the arresting officer.

We are reinforced in our interpretation of this statute by G.S. 20-16.2, which involves the mandatory revocation of a driver's license upon refusal to submit to chemical tests. G.S. 20-16.2(a) provides that chemical tests upon a defendant's blood or breath ". . . shall be administered *at the request of a law-enforcement officer having reasonable grounds to believe the person to have been driving or operating a motor vehicle* on a highway or public vehicular area *while under the influence of intoxicating liquor.*" (Emphasis supplied.) Subsection (c) provides that "[*t*]*he arresting officer,* in the presence of the person authorized to administer a chemical test, *shall request that the person arrested submit to a test* described in subsection (a)." (Emphasis supplied.) Thus, G.S. 20-16.2 specifically authorizes the arresting officer to request that a defendant submit to chemical testing of his blood or breath, and the refusal to such a request can, if the other provisions of G.S. 20-16.2 are met, result in a mandatory revocation of driving privileges. We do not believe that the General Assembly intended to establish a different procedure for requesting chemical tests under G.S. 20-139.1 than it provided in G.S. 20-16.2. Accordingly, we hold that G.S. 20-139.1 is not violated when the request for the chemical analyses comes from the arresting officer, and such an officer is competent to testify as to defendant's refusal to submit to such tests.

[3]  Defendant further contends that G.S. 20-139.1(f) requires that *all* provisions of G.S. 20-16.2 must be complied with before his refusal to submit to chemical tests may be admitted against

him. In support of this argument, defendant discusses in his brief examples in which the procedures followed by the Alamance County Sheriff's Department differed from the procedures prescribed by G.S. 20-16.2. However, these alleged irregularities do not appear in the record on appeal. "Generally speaking, when properly authenticated or certified, the record filed for the purpose of appeal imports absolute verity, and is the sole, conclusive, and unimpeachable evidence of the proceedings in the lower court." 4A, C.J.S., Appeal and Error, § 1143, p. 1201. *See also Civil Service Board v. Page,* 2 N.C. App. 34, 162 S.E. 2d 644 (1968); 4 Am. Jur. 2d, Appeal and Error, § 486, p. 928; 1 Strong, N. C. Index 3d, Appeal and Error, § 42, p. 290. ". . . [M]atters discussed in the brief outside the record will not be considered." *In re Sale of Land of Warrick,* 1 N.C. App. 387, 390, 161 S.E. 2d 630 (1968). Consequently, the question of the relationship, if any, between G.S. 20-139.1(f) and G.S. 20-16.2 is not before us, and we find no error in the procedures followed by the police in this case.

[4] A second contention of the defendant regarding the evidence of his refusal to "take any tests" is that any such refusal is improperly admitted except where he has been advised of his rights according to *Miranda v. State of Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). However, our Supreme Court has stated that:

" . . . Admission of the breathalyzer test is not dependent upon whether *Miranda* warnings have been given and constitutional right to counsel waived. In *State v. Randolph,* 273 N.C. 120, 159 S.E. 2d 324 (1968), this Court, citing *Schmerber v. California,* 384 U.S. 757, 16 L.Ed. 2d 908, 86 S.Ct. 1826 (1966), held that the taking of a breath sample from an accused for the purpose of the test is not evidence of a testimonial or communicative nature within the privilege against self-incrimination. For that reason, the requirements of *Miranda* are inapplicable to a breathalyzer test administered pursuant to our statutes." *State v. Sykes,* 285 N.C. 202, 207, 203 S.E. 2d 849 (1974).

Similarly, the physical dexterity tests are not "evidence of a testimonial or communicative nature within the privilege against self-incrimination" and are not within the scope of the *Miranda* decision and the Fifth Amendment. Therefore, the admission of evidence of defendant's refusal to submit to such

tests does not violate his constitutional right against self-incrimination. *See State v. Paschal,* 253 N.C. 795, 117 S.E. 2d 749 (1961) ; *accord, Alldredge v. State,* 239 Ind. 256, 156 N.E. 2d 888 (1959) ; *State v. Gatton,* 60 Ohio App. 192, 20 N.E. 2d 265 (1938). Therefore, these assignments of error are overruled.

**[5]** Defendant's tenth assignment of error relates to Trooper Clemmons' testimony regarding the leak in the gasoline tank of defendant's car. Defendant argues that the admission of this testimony, over objection, was prejudicial and should have been excluded. We disagree. The record reveals that on cross-examination of Clemmens, defendant brought out essentially the same testimony to which he now objects. The benefit to an objection is lost when the same evidence has previously or subsequently been admitted without objection. *State v. Carey,* 288 N.C. 254, 218 S.E. 2d 387 (1975) ; *State v. Pruitt,* 286 N.C. 442, 212 S.E. 2d 92 (1975) ; 1 Stansbury, N. C. Evidence, § 30, p. 79 (Brandis Rev. 1973). "The admission of testimony over objection is harmless where the defendant elicits similar testimony on cross-examination." *State v. Tudor,* 14 N.C. App. 526, 529, 188 S.E. 2d 583 (1972). Even assuming *arguendo* that the evidence was improperly admitted, defendant has failed to show, and we do not find, how the admission of this evidence could have been prejudicial to the defendant. The reversal of a conviction will not be granted for mere harmless error in the admission of evidence, *State v. Allen* 14 N.C. App. 485, 188 S.E. 2d 568 (1972), and the ruling of the lower court will not be disturbed.

**[6]** In his second, fourth, sixth and eighth assignments of error, defendant contends that the trial court erred in denying his motions for judgment as of nonsuit and directed verdict as to the charge of driving under the influence. He maintains that there was insufficient evidence of intoxication for the case to go to the jury. Again, we disagree.

State's evidence tended to show that Trooper Clemmons observed a vehicle traveling south on I-85 at a high rate of speed for approximately eight miles; that after the car had stopped, Clemmons approached the car and defendant got out of it, whereupon Clemmons noticed a "slight stagger" as well as a moderate odor of alcoholic beverage about defendant's person; that after defendant was taken to the Alamance County jail, he continued to stagger and Clemmons noticed defendant's eyes

State v. Flannery

were red; that during this time, defendant was unsteady on his feet and swaying. Finally, Clemmons testified that he "was of the opinion that Mr. Flannery was under the influence of some intoxicating beverage." Defendant, by failing to object at trial to Clemmons' opinion testimony, has waived his right on appeal to contest the jury's consideration of that evidence. *State v. Blackwell*, 276 N.C. 714, 174 S.E. 2d 534, *cert. den.*, 400 U.S. 946, 27 L.Ed. 2d 252, 91 S.Ct. 253 (1970). And while it is true that the odor of alcohol on one's breath, standing alone, is no evidence that he is under the influence of an intoxicant, *Atkins v. Moye*, 277 N.C. 179, 176 S.E. 2d 789 (1970), our Supreme Court has held that " . . . [t]he fact that a motorist has been drinking, when considered in connection with faulty driving . . . or other conduct indicating an impairment of physical or mental faculties, is sufficient *prima facie* to show a violation of G.S. 20-138." *State v. Hewitt*, 263 N.C. 759, 764, 140 S.E. 2d 241 (1965). Taking all this evidence in the light most favorable to the State as we are bound to do, *State v. McKinney, supra*, we hold that the evidence of defendant's driving, when considered in connection with the evidence of his bloodshot eyes and repeated staggering, was sufficient to take the charge of driving under the influence to the jury and to withstand defendant's motion.

[7] During his instructions to the jury, the trial judge recited that State's evidence tended to show that defendant's eyes were red and his feet were unsteady at the time of his arrest. In fact, however, the evidence had tended to show that defendant did not indicate these characteristics until after his arrival at the police station. The trial judge also referred to both the pursued car and defendant's car as Fords, implying that they were one and the same. In his eleventh and twelfth assignments of error, defendant claims that these errors in the summarization of the evidence constituted prejudicial error. "[O]bjections to the charge in reviewing the evidence and stating the contentions of the parties must be made before the jury retires to afford the trial judge an opportunity for correction; otherwise they are deemed to have been waived and will not be considered on appeal." *State v. Thomas*, 284 N.C. 212, 218, 200 S.E. 2d 3 (1973). The record reveals that defendant made no such objection at trial, even though the trial judge offered both sides the opportunity to do so. These assignments of error are overruled.

Defendant's seventeenth assignment of error relates to the trial court's failure to instruct the jury to disregard three answers elicited from Clemmons after an objection to the questions had been sustained. In the first two instances objected to by defendant, the record fails to show the question, the objection, the answer or the motion to strike. "Where there is no *objection to the admission of evidence, the competency of the evidence is not presented.*" *Cogdill v. Highway Comm.* and *Westfeldt v. Highway Comm.*, 279 N.C. 313, 318, 182 S.E. 2d 373 (1971). Any irregularities involving these two instances, therefore, are not before us. In the third instance cited by defendant, the record shows that Clemmons was asked "And, if you know, why was Trooper Coleman there?", to which the witness replied "I called him there because he's a certified Breathalyzer Operator." Defendant objected and moved to strike the answer. The court sustained the objection but did not direct the jury to disregard the answer. However, defendant has shown no prejudice which resulted, and we find none. This assignment is without merit.

In his fourteenth and fifteenth assignments of error, defendant contends that the trial court erred in denying his motions for a new trial and to set aside the verdict as to both charges. These motions are addressed to the sound discretion of the trial court and the refusal to grant them is not reviewable in the absence of an abuse of discretion. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971). Having reviewed the evidence, we can find no abuse of discretion in the trial court's denial of these motions.

No error.

Judges HEDRICK and ARNOLD concur.